IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal Number: 3:22CR152-JAG |
| | ) |
| ROSCOE CLEVELAND COPELAND, | ) |
| Defendant. | ) |
| | ) |
| | ) |

**DEFENDANT'S POSITION ON SENTENCING**

This is not a typical fraud case. The one who initiated, ran, and took the majority of the benefits have either disappeared or outlasted the statute of limitations. This includes Tommie Gaines and James Bueckers, who deceived Mr. Copeland and Ms. Long into believing that he could obtain funding for their clients' mortgages. Mr. Copeland's fraud was to promise in pre-printed marketing materials that funds would be held in escrow, while instead he spent that money – not just on himself, but developing the business. He did this because he was so confident that the loans would be funded.

More to the point, Mr. Copeland never ran or hid; he did not use a false name or pose as others online. He still uses the same e-mail address (arsinvestments@yahoo.com) that he used in 2017. Unlike Mr. Gaines and Mr. Bueckers, who took the money and ran, and whom apparently the government cannot now find. But because it settled, four years later, on the smaller fish of Mr. Copeland and Ms. Long does not make them the masterminds or morally responsible for all of the damage. But they will be financially responsible for it, under the rules of joint and several liability. This, along with stringent conditions of supervised release, are sufficient punishment to serve the § 3553(a) factors in this case.

1

## I. Guidelines

### A. Criminal History Departure

Mr. Copeland receives one criminal history point for a deferred disposition in a simple marijuana possession case that is now almost 15 years old. It only scores because the offense commencement date was 2017, and the government so severely delayed this prosecution.

That single offense bumps Mr. Copeland from Criminal History Category I to Category II, and his range from 51-63 to 57-71 (if the objections are denied) or from 21-27 up to 24-30 if the objections are sustained. The usefulness of this conviction for predicting recidivism is almost zero. The Court should compensate by granting a criminal history departure because of the outsize effect of this minor and dated misdemeanor. *See* U.S.S.G. § 4A1.3; PSR ¶ 97.

Range

### B. Range

Mr. Copeland's range depends on the Court's ruling on objections and the request for a departure. It ranges from 27 to 33 months up through 57 to 71 months.

## II. Mr. Copeland's History and Characteristics and The Nature and Circumstances of the Offense Are Unusual and Mitigated

Although this case formally fulfills the definition of wire fraud, it is more in the nature of conversion – Mr. Copeland spent money that had been entrusted to him to hold. But, in asking what sentence is needed to deter further crimes, protect the public, or provide restitution, *see* 18 U.S.C. § 3553(a)(2)(A) – (7). Mr. Copeland's intent and motive are central questions. If he had, for example, lied to people to get their money anonymously, or stolen it through identity theft, and then used the proceeds solely for selfish personal purposes, or denied what happened later, then imprisonment would be the thing.

But Mr. Copeland spent the money mostly (though he concedes not entirely) to establish the business that he so desperately wanted to succeed, and his conduct *after* it became apparent that Bueckers and Gaines weren't going to fund any loans speaks volumes about his character and the lack of any need for imprisonment. He stayed put and kept in touch with those to whom he owed money. He hasn't been able to repay them, yet; but he did not hide or obscure his identity during the entire time so as to get away later, and when discovered he didn't hide.

In fact, Mr. Copeland openly spoke with investigators when they came to interview him, and admitted that he had spent the money that was supposed to be in escrow. Contrast this with what the Court sees in so many fraud and identity theft cases, where defendants move funds through accounts as fast as possible, and use false names or stolen identities to transfer funds.

Many of the letters received in support of Mr. Copeland reflect this character, in detail. Pastor Robert Olive, President of the Southern Christian Leadership Conference – Detroit describes particularly how Mr. Copeland attended and then began to plan community events, and participated in the organization, donating his time and taking no credit. Ex. 1. He did similar work in the community with Dr. Mary Lee. Ex. 2. Joshua Weinstein has extensive experience in the low end real estate industry in Detroit, and has worked with and is friends with Mr. Copeland. He was surprised by this case because this was out of character, and still believes there is "no one better to run a company restoring homes and home ownership in lower middle class Detroit." Ex. 3. Perhaps the most insightful letter is from Keith Stallworth, a former legislator who, after a conviction, was given a chance with home confinement, and went on to found the first African-American owned overhead and underground electric utility distribution construction, maintenance and power restoration company, and now runs a community organization. Ex. 4. He wishes he'd met Mr. Copeland sooner, and understands the desire to be recognized as successful and the

3

temptations it brings. Other letters from work colleagues and employees confirm that Mr. Copeland has, before and since this crime (in 2017) shown his generous and hardworking character in a way that people notice.

### III. Restitution is Punishment

Restitution is meant to compensate victims of crime; but it also "serves punitive purposes." *Paroline v. United States*, 572 U.S. 434, 456 (2014); *Pasquantino v. United States*, 544 U.S. 349, 365 (2005) ("The purpose of awarding restitution" under 18 U.S.C. § 3663A "is ... to mete out appropriate criminal punishment"). Here, because of joint and several liability, Mr. Copeland must repay money that he never kept or spent but forwarded to Bueckers and Gaines in hopes that they would secure loan funding. Of note, the restitution in this case exceeds the benefits Mr. Copeland got, and therefore its character as punishment is stronger. And every dollar that he earns but cannot keep will remind him of the crime and his duty to the victims.

In other words, restitution can and does do the work of imprisonment better in fulfilling the need for just punishment, to promote respect for the law, and reflect the seriousness of the crime. *See* 18 § 3553(a)(2)(A).

### IV. Similarly Situated Defendants Receive Sentences Without Imprisonment and Well Below the Guidelines

It is important to consider nationwide sentencing data to determine whether a particular sentence would introduce unwarranted disparities under 18 U.S.C. § 3553(a)(6). *See United States v. Perez-Paz*, 3 F.4th 120 (4th Cir. 2021) (remanding to consider data); *United States v. Boucher*, 937 F.3d 702, 712-13 (6th Cir. 2018) (relevant disparities are "those among federal defendants on a national scale," consulting Sentencing Commission statistics). The Sentencing Commission's data from fiscal years 2017-2021 confirm that a sentence significantly below the guidelines is appropriate. For defendants sentenced under U.S.S.G. § 2B1.1 with a range of 27-33 months,

AND WITH THE SAME LOSS AMOUNT LEVEL OF +14 POINTS, the average sentence was 14.57 months.[1] A full 79 cases out of 327 (~24%) received a sentence of one *month* or less. Nearly half (149 out of 327 or 45.6%) received a sentence of 12 months and one day or less. Even results for *all* 2B1.1 defendants with a loss amount at +14 AND WITH A +4 per 2B1.1(b)(2) for substantial financial hardship to 5 or more victims,[2] 231 cases out of 331 (70%) received a below guidelines sentence. Surveying the country, there is a clear consensus that prison, especially in the amount prescribed by the Commission, is greater than necessary to satisfy the § 3553(a) factors. That is especially true in Mr. Copeland's case.

                                                      Respectfully Submitted,
                                                      Roscoe Cleveland Copeland.

By:       /s/
          Counsel
          Joseph S. Camden
          Va. Bar No. 92143
          Assistant Federal Public Defender
          Office of the Federal Public Defender
          701 E. Broad St., Ste. 3600
          Richmond, VA 23219
          (804) 565-0830
          Fax (804) 648-5033
          joseph_camden@fd.org

---

[1] United States Sentencing Commission Data Files, https://www.ussc.gov/research/datafiles/commission-datafiles, FY 2017-2021, Filters: GDLINEHI = 2B1.1; GLMIN = 24; SOC1 = 14; result from 221 cases that satisfied the criteria
[2] GDLINEHI = 2B1.1; SOC1 = 14; SOC2 = 4